UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DAMIEN M. MORENO, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CAUSE NO. 3:06-CV-0458 WL |
| ) | |
| ED BUSS, ) | |
| ) | |
| Respondent. ) | |

**OPINION AND ORDER**

Petitioner Damien Moreno, a prisoner confined at the Indiana State Prison, submitted a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 dealing with demotion in credit time earning classification in a prison disciplinary hearing. On November 17, 2005, three prisoners attacked Correctional Lieutenant Cambe in A Cellhouse ("ACH"). The three were identified and charged with battery. Mr. Moreno was also charged with the battery even though Lt. Cambe stated the did not see Mr. Moreno during the attack. On December 29, 2005, a disciplinary hearing board ("DHB") found Mr. Moreno guilty of battery and imposed one year of segregation and a demotion in credit time earning classification. He appealed unsuccessfully to the superintendent and the final reviewing authority.

Where prisoners lose good time credits or are demoted in credit time earning classification at prison disciplinary hearings, the Fourteenth Amendment's Due Process Clause guarantees them certain procedural protections, including (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision maker; (3) opportunity to call witnesses and present exculpatory evidence in defense when

consistent with institutional safety and correctional goals; and (4) a written statement by the fact finder of evidence relied on and the reasons for the disciplinary action, *Wolff v. McDonnell*, 418 U.S. 539 (1974), and "some evidence" to support the decision of the prison disciplinary board. *Superintendent, Mass. Correctional Institution v. Hill*, 472 U.S. 445, 455 (1985).

The report of investigation of the incident states that "upon being searched the day of the incident, Offender Moreno was found to be in possession of a sweat shirt with blood on it." (Docket #12-2). The investigation report contained photographs of the sweatshirt, and copies of the photographs have been submitted as part of the administrative record. (Docket #12-26). When Mr. Moreno was screened, he asked that the sweatshirt be presented as evidence at the hearing, and asked that it be tested to determine whether the stains were blood or paint. (Docket #12-3). In his traverse, he notes that his work assignment was the paint shop, which is confirmed by the segregation/confinement report. (Docket #12-4).

Mr. Moreno asserts in his petition that the failure to allow the sweatshirt into evidence violates Indiana Department of Correction policy, citing Operational Directive ISP 00-28 dealing with handling of evidence. (Docket #1-2). But violation of department of Correction policies do not state a claim upon which relief can be granted by this court. *Hester v. McBride*, 966 F.Supp. 765, 774-75 (N.D. Ind. 1997).

Mr. Moreno also asserts that the DHB's denial of the sweatshirt as evidence violated his right to present exculpatory evidence as a part of his defense. If the sweatshirt was clearly inculpatory evidence, then the failure of the board to allow the sweatshirt itself into

2

evidence would not violate Mr. Moreno's due process rights because inculpatory physical evidence need not be presented at the hearing. *Hayes v. McBride*, 965 F.Supp. 1186, 1189 (N.D. Ind. 1997), citing *Griffin v. Spratt*, 969 F.2d 16, 22 (3rd Cir. 1992). But Mr. Moreno contends that the sweatshirt was exculpatory evidence because analysis of the sweatshirt would have established that the stains were paint, not blood.

Because he listed the sweatshirt as exculpatory evidence, Mr. Moreno had the right, consistent with security considerations, to present it as evidence and have it viewed by the DHB. *Wolff v. McDonnell,* 418 U.S. at 566. The sweatshirt need not have been physically present the hearing itself so long as the DHB examined it before making its decision. The respondent concedes in his memorandum in support of his response to order that the DHB did not view the sweatshirt itself, as requested by Mr. Moreno. He argues, however, that "[t]he DHB did review and consider the bloody sweatshirt because it reviewed the investigative files which contained photographs of the sweatshirt (Exhibits Y1-2)." (Docket #12-1 at p. 5).

There would be many circumstances where review of a photograph of a particular piece of evidence would be sufficient in a prison disciplinary hearing. But review of a photograph would not have allowed the DHB to determine the nature of the stains on the sweatshirt, which is the point at issue. The court has examined the photographs of the sweatshirt submitted by the respondent as part of the record and cannot see the stains, let alone determine what might have caused them. The respondent does not argue that institutional security would have been imperiled by the DHB viewing the actual sweatshirt,

3

and this court can think of no rational institutional security argument that would justify the DHB in not looking at the sweatshirt or having it tested.

Because the DHB denied Mr. Moreno evidence he had requested, it violated the directive of *Wolff v. McDonnell* that an inmate charged with misconduct be given the opportunity to call witnesses and present evidence in his defense when consistent with institutional safety and correctional goals. Moreover, this lapse cannot be considered as harmless because the sweatshirt, if it was indeed bloodstained, is the only evidence in the record that might support a finding of guilt.

Mr. Moreno asserts in his petition that there was insufficient evidence to find him guilty of battery. Due process requires "some evidence" to support the decision of the prison disciplinary board." *Superintendent, Mass. Correctional Institution v. Hill*, 472 U.S. at 455. The respondent argues in his memorandum that:

> A conduct report alone may provide "some evidence" of guilt, notwithstanding its brevity or the presence of conflicting evidence. *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). Looking at the conduct report, the investigative report, the bloody sweatshirt, the video and the written statements of the witnesses, there is sufficient evidence to support the DHB's ruling that the Petitioner had committed a Rule 102 "battery" violation of the ADP.

(Docket #12-1 at p. 11).

Having not viewed the sweatshirt, or having it tested, the board had no basis for determining the nature of the stains and therefore cannot rely on the sweatshirt as evidence supporting guilt. The court will analyze the other evidence cited by the respondent and by the DHB in its Report of Disciplinary Hearing (docket #12-15).

4

The conduct report, written by the institutional investigator, states that "based on the information contained in the attached report of investigation this office is charging offender Moreno with violation of ADP code #102 Battery." (Docket #12-2). This report, unlike most conduct reports, is not based on the personal knowledge of the author. Instead, this report refers only to information contained elsewhere. If the conduct report had been written by the victim, Lt. Cambe, identifying Mr. Moreno as one of inmates who attacked him, the DHB would have been justified in relying on it to find Mr. Moreno guilty. But the DHB cannot rely on this conduct report as evidence supporting a finding of guilt.

As with the conduct report, the investigative report prepared by the institutional investigator was not based on the author's personal knowledge, but only refers to information contained in the investigative file. The report of investigation of incident refers to the sweatshirt allegedly confiscated from Mr. Moreno and "information received by this office" suggesting that Moreno "was involved in planning the attack and was either directly or indirectly involved in the attack itself." (Docket #12-2). In its order to show cause, this court ordered the respondent to produce the entire record of the administrative proceedings. But the record submitted by the respondent does not contain the investigative file or any informant statements.

The investigative file may, as the report of investigation suggests, contain confidential statements from inmates or some other source implying that Mr. Moreno was involved in planning the attack on Lt. Cambe or was present at the attack. But even assuming that the file contains such statements, before a DHB can rely on an informant's statement in a prison disciplinary hearing there must be some evidence of the reliability

5

of the informant. The committee could have used one of four methods to establish the reliability of an informant's testimony. These methods are:

> (1) the oath of the investigating officer as to the truth of his report containing confidential information and his appearance before the disciplinary committee; (2) corroborating testimony; (3) a statement on the record by the chairman of the disciplinary committee that [ ] he had firsthand knowledge of the sources of information and considered them reliable on the basis of their past record of reliability; or (4) in camera review of material documenting the investigator's assessment of the credibility of the confidential informant.

*Whitford v. Boglino,* 63 F.3d 527, 535-36 (7th Cir. 1995), quoting *Mendoza v. Miller*, 779 F.2d 1287, 1293 (7th Cir. 1287, 1293) (internal citations and quotations omitted).

None of these indicia of reliability are present in the record presented by the respondent to this court. Accordingly, the DHB could not properly have relied on any informant statements that may have been contained in the investigative file to find that Mr. Moreno was involved in the attack on Lt. Cambe.

In its report of disciplinary hearing, the DHB states that it relied in part on witness statements to support the finding of guilt. The administrative record submitted to this court contains seven witness statements. (Docket #12-5, 6, 7, 8, 9, 10, and 11).Three of the statements, (docket #12-5, 9, and 10), at least one of which was a staff witness, place Mr. Moreno at the American Legion Office at the time of the attack on Lt. Cambe. These witness statements do not support a finding of guilt.

Sgt. Hahn states that he was not present at the incident itself and that when he took Mr. Moreno in for identification he was not identified as being one of the assailants. (Docket #12-7). Officer Carrasco states that he was not present at the time of the battery and

"was not involved in his portion of the case." (Docket #12-11). These witness statements do not support a finding of guilt.

The most important witness statement is that of the victim, Lt. Cambe, which reads as follows: "I did not see Moreno #891905 during the assault. I was told by Sgt. Tibbles that Moreno was in possession of a sweatshirt that contained blood." (Docket #12-6). Sgt. Tibbles states that "to the best of my knowledge Offender Moreno was found with the bloody shirt." (Docket #12-8).

Lt. Cambe states that he did not see Mr. Moreno during the assault, which does not support a finding of guilt. The references by Lt. Cambe and Sgt. Tibbles to the sweatshirt confiscated from Mr. Moreno might constitute "some evidence" except that the DHB declined to allow the sweatshirt into evidence and examine it to determine whether the stains were blood or paint. Moreover, neither Lt. Cambe or Sgt. Tibbles saw the sweatshirt themselves, so they cannot state of their own personal knowledge where the sweatshirt came from or the source of any stains that might have been on it.

The respondent and the DHB refer to video evidence as supporting a finding of guilt. Mr. Moreno, on the other hand, asserts that the DHB violated his rights "when the video clearly shows that I was not involved . . .." (Docket #1-1 at p. 5).

The Indiana Department of Correction has video cameras located at different places in many of its facilities. The DHB reviewed the videotapes recorded in ACH on the date of the attack on Lt. Cambe. While no video showed Mr. Moreno actually participating in the attack, the board stated in its Video Review Form that "[h]e was see[n] in the cell house (Merono (sic) #891905) on the 300 [range] of ACH right before the incident. Was not seen

7

again." (Docket #12-13). Accordingly, the evidence shows that three inmates attacked Lt. Cambe in one portion of A Cellhouse. From a surveillance video, the DHB identified Mr. Moreno as being in another part of the cellhouse at about the time of the incident.

The term "some evidence," as used in *Superintendent, Mass. Correctional Institution v. Hill*, allows prison disciplinary boards a great deal of leeway. For example, the United States Court of Appeals for the Seventh Circuit has concluded that the fact that a weapon was found in an inmate's living area, even though the living area was shared with a few other inmates, is "some evidence" of guilt and is sufficient to support the board's finding of guilt. *Hamilton v. O'Leary*, 976 F.2d 341 (7th Cir. 1992) (holding that an inmate constructively possessed a weapon found in his cell that he shared with three other inmates). But while the *Hamilton* Court held that a shared cell does not defeat constructive possession, it also stated in dicta that if a room is accessible by a larger population of inmates, the evidence would not be sufficient to support a conviction even under the lenient "some evidence" standard. *Id.* at 345 (discussing the petitioner's argument that thirty-two other inmates had access to a vent where weapons were found — "we doubt that a 3.1% chance is 'some evidence' of guilt").

Cellhouses at the Indiana State Prison are large buildings several stories tall, housing hundreds of inmates. Even under the lenient "some evidence" standard, that a video may have shown Mr. Moreno somewhere else in the building sometime near the time of the incident does not constitute any evidence that he was involved in the attack on Lt. Cambe.

The only other evidence cited by the respondent as supporting a finding of guilt is the sweatshirt confiscated from Mr. Moreno's cell. Mr. Moreno, however, asserted that this

was exculpatory evidence and, as previously noted, the DHB denied his request that it be received into evidence and examined by the board.

The DHB did not review potentially exculpatory evidence even though Mr. Moreno made a timely request that it do so, thereby denying him due process under the standards established by *Wolff v. McDonnell*. If the stains on the sweatshirt were in fact bloodstains, then the sweatshirt is the only evidence in the record presented by the respondent to this court that even remotely connects Mr. Moreno with the offense with which he was charged. So by refusing to consider that evidence, as requested by Mr. Moreno, the board also violated the standard established by *Superintendent, Mass. Correctional Institution v. Hill* that there be "some evidence" in the record supporting the decision of the prison disciplinary board.

For the foregoing reasons, the court the court **GRANTS** this petition and sets aside the Disciplinary Hearing Board's finding of guilt in case number ISP 05-12-0152. If the sweatshirt confiscated from Mr. Moreno on November 18, 2005, still exists, the court **AFFORDS** the respondent sixty days within which to retry the petitioner. If the respondent can not retry the petitioner, or elects not to retry him, the court **ORDERS** the respondent to restore Mr. Moreno to Credit Class I retroactively to the date he was demoted as a result of the disciplinary action that forms the basis of this petition for writ of habeas corpus, and **ORDERS** the respondent to **AFFORD** the petitioner all good time

credits he would have earned had he not been demoted in credit earning class.

**SO ORDERED**

DATED: October  30 , 2007

                                         **s/William C. Lee**
                                         William C.  Lee, Judge
                                         United States District Court